**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

HENRY HOLESAPPLE, ANTHONY
NASTASI, and MARK EMORY
WASHINGTON,

        Plaintiffs,

    v.

E-MORTGAGE MANAGEMENT, LLC,
GREG ENGLESBE, and BRIAN
KRASNER,

        Defendants.

CIVIL NO. 11-0769(NLH)(KMW)

**OPINION**

<u>Appearances</u>:

SAMUEL A. DION
DION & GOLDBERGER, ESQS.
1616 WALNUT STREET, SUITE 2316
PHILADELPHIA, PA 19103
*Attorneys for plaintiffs*

DAVID J. KHAWAM
SENTRY OFFICE PLAZA, SUITE 604
216 HADDON AVE.
WESTMONT, NJ 08108
*Attorney for defendants*

**<u>HILLMAN, District Judge</u>**

        Before the Court is plaintiffs' motion for conditional
class certification pursuant to the Fair Labor Standards Act
("FLSA").  Also before the Court is defendants' motion for
reconsideration of the Court's Order granting an extension of
time to file a reply brief.  For reasons explained below,
plaintiffs' motion for conditional class certification will be
denied without prejudice, and defendants' motion for

reconsideration will be denied.

I.   **BACKGROUND**

      Plaintiffs were former employees of defendant E-
Mortgage Management, LLC ("E-Mortgage").  E-Mortgage is a
mortgage lending and brokerage company that operates
approximately eight offices in at least four states, including
New Jersey, Pennsylvania, Maine and Delaware.  There is no
dispute that E-Mortgage is an employer within the meaning of 29
U.S.C. § 203(d).[1]  Plaintiffs worked as "loan officers" or
"customer service representatives."[2]  Their primary job duties
were to solicit mortgage loans and oversee the loan applications
until they were sent to processing and closing.  Plaintiffs were
paid on a commission only basis.  Plaintiffs allege that they
were not paid the minimum wage, and that they routinely worked in
excess of 40 hours per week, but did not receive overtime
compensation.

      Plaintiffs allege that defendants violated FLSA Section
206(a) which requires employers to pay employees the current

---

   [1] "'Employer' includes any person acting directly or
indirectly in the interest of an employer in relation to an
employee and includes a public agency, but does not include any
labor organization (other than when acting as an employer) or
anyone acting in the capacity of officer or agent of such labor
organization."  29 U.S.C. § 203(d).

   [2] It appears that at some point the title changed from "loan
officer" to "customer service representative" although plaintiffs
state that the duties were the same.

minimum wage[3], and FLSA Section 207(a)(1) which requires employers to pay overtime to employees who work in excess of 40 hours in a workweek at a rate not less than one and one-half times the regular rate at which he is employed.  Plaintiffs seek for themselves and similarly situated employees declaratory and compensatory relief, unpaid wages, unpaid overtime, and reasonable costs and attorneys' fees.  Plaintiffs filed a motion for conditional class certification under the FLSA.  Defendants oppose plaintiffs' motion and argue that plaintiffs' declarations submitted in support of their motion were inadequate and factually incorrect.  Plaintiffs sought and were granted an extension to file a reply brief attaching revised affidavits.  Defendants filed a motion for reconsideration of the Court's Order granting the extension.

## II.  **JURISDICTION**

Plaintiffs bring this action on behalf of themselves and others "similarly situated" to remedy alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and therefore this Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

---

[3] As of July 24, 2009, the federal minimum wage is $7.25 an hour.  See 29 U.S.C. § 201(a)(1)(c).

III.  **DISCUSSION**

A.    **Motion for Reconsideration**

Plaintiffs filed their motion for conditional class certification on May 18, 2011.  According to Local Rule 78.1, the motion day for the hearing was set for June 20, 2011, which date was entered by the Clerk of Court on the Court's official docket. See L.Civ.R. 78.1.  The deadline for opposition briefs is fourteen days before the motion day, or June 6, 2011, and the deadline for reply briefs is seven days before the motion day, or June 13, 2011.  See id.  When plaintiffs filed their motion for conditional class certification, they erroneously stated on their docket entry that the opposition brief was due on June 13, 2011, rather than June 6, 2011.  Defendants filed their opposition brief on June 13, 2011, presumably according to the date entered by plaintiffs which was seven days after the deadline.

Realizing the error with regard to the opposition deadline, on June 20, 2011, plaintiffs filed a motion for extension of time to file a reply.  The extension was necessary because the defendants did not file their opposition until June 13, 2011, which was the original deadline for the reply under the Local Rules.  The Court granted plaintiffs' motion for extension on June 29, 2011.  Defendants filed a motion for reconsideration because the Order granting the extension was entered prior to the date their opposition brief to the motion for extension was due,

4

on July 5, 2011.

This Court has discretion to extend a deadline after the time has expired upon a showing of good cause if the party failed to act because of excusable neglect.  See Fed.R.Civ.P. 6(b)(1)(B); Drippe v. Tobelinski, 604 F.3d 778, 782 (3d Cir. 2010).  Although defendants accurately recite the procedural history surrounding the filing of the motion for extension, they do not argue that they have been prejudiced in any way by the filing of plaintiffs' reply seven days after the deadline, which was necessitated by the fact that defendants filed their response late, without requesting an extension.  Here, the interests of justice would favor allowing defendants to file a late response, without having requested an extension due to the erroneous deadline stated by plaintiffs, and allow plaintiffs, upon motion for extension, a seven day extension to file their reply.

Accordingly, defendants' motion for reconsideration will be denied.

**B.    Standard for Class Certification Under the FLSA**

Plaintiffs allege that defendants violated the FLSA Sections 206(a)[4] and 207[5] and seek to sue on behalf of themselves

---

[4] Section 206(a) requires that employers pay employees at least the minimum wage.  See 29 U.S.C. § 206(a).

[5] Section 207 sets the maximum hours under the FLSA.  See 29 U.S.C. § 207.  An employer shall not employ any employee for a

5

and other "employees similarly situated" pursuant to Section 216(b)[6]  See 29 U.S.C. § 216(b), ruled unconstitutional on other grounds in Alden v. Maine 527 U.S. 706, 712 (1999) ("finding unconstitutional provision of FLSA authorizing private actions against states in state courts without their consent).  Rather than opting-out as is done in a traditional class action lawsuit, in an FLSA class action, potential class members must opt-in by providing written consent filed with the Court.  Manning v. Gold Belt Falcon, LLC, --- F.Supp.2d ----, 2011 WL 4583776, at *1 (D.N.J. Oct. 5, 2011) (stating that under the FLSA there are "two pertinent requirements to maintain a collective action: 1) each Plaintiff must manifest his written consent, and 2) Plaintiff's attorney must file that consent with the Court.").

The term "similarly situated" is not defined in the FLSA.  See Ruehl v. Viacom, Inc., 500 F.3d 375, 389 n.17 (3d Cir. 2007).  Courts that have addressed whether a putative class is similarly situated have adopted or recognized a two-step approach.  See Morisky v. Public Service Elec. and Gas Co., 111 F.Supp.2d 493, 497 (D.N.J. 2000) (citation omitted); Kronick v.

---

"workweek longer than forty hours unless such employee receives compensation for his employment ... specified at a rate not less than one and one-half times the regular rate at which he is employed."  Id.

[6]  Section 216 permits, *inter alia,* a plaintiff and other employees similarly situated to file suit against his or her employer.  See 29 U.S.C. § 216(b).

<u>Bebe Stores, Inc.</u>, No. 07-4514, 2008 WL 4546368 at *1 (D.N.J. 2008) (In "the absence of guidance from the Supreme Court and Third Circuit, district courts have developed a test consisting of two stages of analysis.") (citing <u>Morisky</u>, 111 F.Supp.2d at 496). At the first stage, or notice stage, the court determines whether notice of the action should be given to potential class members. <u>See Morisky</u>, 111 F.Supp.2d at 497; <u>Kronick</u>, 2008 WL 4546368 at *1 ("During the initial notice phase, courts make a preliminary inquiry into whether the plaintiff's proposed class is one of similarly situated members.") (citations omitted).

Although the standard applied at this stage is fairly lenient, courts in the Third Circuit are divided on the amount of evidence needed to establish whether plaintiff is similarly situated to the putative class. <u>See White v. Rick Bus Co.</u>, 743 F.Supp.2d 380, 387 (D.N.J. 2010). "Some courts, particularly those in the Western Districts of Pennsylvania, employ the more lenient of the two relaxed standards." <u>Id.</u> "Under that case law, 'preliminary certification is granted upon a mere allegation that the putative class members were injured by a single policy of the defendant employer.'" <u>Id.</u> (citations omitted, emphasis removed). "In contrast, other courts, including those in the District of New Jersey, 'requir[e] the plaintiffs to show a modest factual nexus between their situation and that of the proposed class members.'" <u>Id.</u> (citing <u>Garcia v. Freedom Mortg.</u>

7

Corp., No. 09-2668, 2009 WL 3754070, *2 (D.N.J. Nov. 2, 2009),
quoting Aquilino v. Home Depot, Inc., No. 04-4100, 2006 WL
2583563 at *2 (D.N.J. 2006) (emphasis removed);
Villanueva-Bazaldua v. TruGreen Lim. Part., 479 F.Supp.2d 411
(D.Del. 2007)).

        The "factual nexus" standard will be applied in this
case for the initial stage.  See Kronick, 2008 WL 4546368 at *1
(adopting the evidentiary standard articulated in Aquilino as
requiring a plaintiff to show "a factual nexus between their
situation and the situation of other current and former
[employees] sufficient to determine that they are 'similarly
situated.'") (citing Aquilino, 2006 WL 2583563, at *2).  "In
spite of the modest [factual nexus] evidentiary standard, courts
have not hesitated to deny conditional certification when
evidence is lacking."  Dreyer v. Altchem Environmental Services,
Inc., No. 6-2393, 2007 WL 7186177, at *3 (D.N.J. Sept. 25, 2007).

        In the second stage, or "reconsideration stage," the
court "makes a second determination after discovery is largely
complete and the case is ready for trial."  Morisky, 111
F.Supp.2d at 497 (citation omitted); Kronick, 2008 WL 4546368 at
*1 ("In the second stage, after more evidence is available, the
court makes a final determination as to whether the plaintiff is
similarly situated to the rest of the class.").  "In its analysis
of the 'similarly situated' question at this stage, the court has

8

much more information on which to base its decision and, as a result, now employs a stricter standard." Morisky, 111 F.Supp.2d at 497.  If the court finds the plaintiffs are similarly situated during the second stage, the case may proceed to trial as a collective action.  Id.  The plaintiff bears the burden of proving that class members are similarly situated.  See Troncone v. Velahos, No. 10-2961, 2011 WL 3236219, at *4 (D.N.J. July 28, 2011).

### B.   Plaintiffs' Motion for Conditional Class Certification

Initially, plaintiffs alleged that they worked in excess of 51 hours per workweek based on their bi-weekly paystubs which stated "Paid Time - Available 112.000 hours."  During the initial scheduling conference with the Court, which occurred after plaintiffs had filed the instant motion, it was suggested that the 112 hours did not refer to biweekly hours worked but instead was a notation that referred to the amount of time the employee accrued for "paid time off" such as vacation or sick time.  This explanation was confirmed in the certification submitted by John Miriello, Director of Human Resources for E-Mortgage and later admitted by plaintiff Henry Holesapple in his declaration.  Nevertheless, plaintiffs still maintain that they worked in excess of 40 hours per workweek.[7]

---

[7] The timing and shifting basis of plaintiffs' motion is very troubling to this Court.  It seems clear that the original

Plaintiffs Henry Holesapple and Anthony Nastasi submitted declarations in support of their motion for conditional class certification.  In their response, defendants attacked the declarations as inadequate.  In reply, plaintiffs submitted revised declarations from Holesapple and Nastasi, and an additional declaration from plaintiff Mark Emory Washington who later joined in this lawsuit.

All three plaintiffs state that they worked at E-Mortgage's Hainesport, New Jersey office.  Plaintiff Holesapple states that he was formerly employed by E-Mortgage as a loan officer from April 9, 2009 until December 30, 2010.  Holesapple states that although the employee handbook states that the normal work schedule is Monday through Friday from 8:30 a.m. to 5:30 a.m., that he was directed by his supervisor, Jeff Krasner, to

───────────────────

motion and certifications as filed by plaintiffs were based on a completely inaccurate factual assumption and, moreover, that the inaccuracy of those certifications was made known to plaintiffs' counsel as early as June 9, 2012.  Instead of withdrawing their motion, which would have been the responsible thing to do, plaintiffs waited until after defendants had filed their opposition to amend their legal and factual basis for the pending motion.  Not only did plaintiffs' lack of diligence and accuracy improperly shift and expand the factual and legal basis for their motion, it effectively denied defendants a fair opportunity to reply.  This kind of gamesmanship is litigation practice at its worst and could provide a basis, standing alone, to deny plaintiffs' motion.  While the Court will exercise its discretion to resolve the motion on the merits and deny it without prejudice, plaintiffs' counsel is advised that their pleadings, attestations, and motion practices are subject to Appendix R of the Court's Local Rules, the Rules of Professional Conduct and Rule 11 of the Civil Rules of Federal Procedure.

work from 8:00 a.m. to 8:00 p.m. Mondays through Fridays.
Holesapple states that he regularly worked between 48 and 60
hours on weekdays and another 5 to 10 hours on weekends.  He
states that his supervisor required him to take files home to
work on in the evenings and weekends.

Holesapple states that he observed other employees in
the Hainesport office work similar hours, in excess of a 40 hour
workweek, including plaintiffs Anthony Nastasi and Mark
Washington, as well as Musa Branham, and not receive overtime
pay.  Holesapple also states that all loan officers were paid on
a 100% commission basis so that if he did not earn any
commissions during a pay period, he would receive no pay at all.

Plaintiff Anthony Nastasi states in his declaration
that he was formerly employed by E-Mortgage as a loan officer
from April 9, 2009 until December 30, 2010.  He states that E-
Mortgage had a policy requiring plaintiffs and all customer
service representatives to work at least 53 hours or more per
week, and that they were paid on a 100% commission basis.  Natasi
states that he was told that office hours were 10:00 a.m. to 8:00
p.m. Mondays through Thursday, and 10:00 a.m. until work was
completed on Fridays but no earlier than 3:00 p.m.  He states
that his work hours exceeded 50 hours weekly.  He states that he
usually came in by 10:30 a.m. and stayed until 8:00 p.m., and
worked 2-3 hours daily at home, including weekends.  Nastasi

11

states that he and the other customer service representatives were not paid for the hours that they actually worked, and were not paid for overtime hours.  Nastasi states that the commissions he received did not amount to minimum wages ($7.25 per hour).

Plaintiff Mark Emory Washington states in his declaration that he was formerly employed by E-Mortgage as a loan officer from July 2, 2008 until August 2009.  In August 2009, he was given the title of office manager.[8]  He performed the same duties as a loan officer, with additional duties to oversee other loan officers.  Washington states that he normally worked 52 hours per week.  He states he worked 8:30 a.m. to 8:00 p.m. Mondays through Thursday, and on Fridays, he worked six hours.

As officer manager, Washington observed the work hours of all loan officers and states that all of them, including himself, on average worked in excess of 50 hours weekly.[9] Washington also states that any worker that did not come into the

---

[8]   Washington does not state when his employment with E-Mortgage was terminated.

[9]   The Court has already noted, *supra* note 7, the unusual and troubling way that plaintiffs submitted their motion.  The Declaration of Mark Washington, dated June 17, 2011, and filed pursuant to 28 U.S.C. § 1746, was not part of plaintiffs' original motion nor has any reason been proffered as to why it was presented to the Court only in reply.  What is most troubling is that it directly contradicts the June 9, 2011 Declaration of Brian Krasner, who declares under penalty of perjury that "All CSRs work and have worked less than 40 hours per week...." It appears to this Court that Washington's and Krasner's Declarations can not both be truthful.

office before 10:00 a.m. would be criticized for their lack of
work ethic by supervisors Brian Krasner and Jeff Krasner and
those loan officers would be taken off inbound calls.[10]  He
states that when he became office manager, he would have to deny
inbound leads to anyone who did not arrive by 10:00 a.m.
Washington also states that all loan officers were paid on a 100%
commission basis, and that he observed that some loan officers
did not receive any compensation if they failed to close out any
loans.  He states that all loan officers had the same duties as
himself, including Henry Holesapple, Musa Branham, and Anthony
Nastasi.

       Defendants submitted 14 declarations to rebut the
original declarations of the plaintiffs.  Supervisors at the
Hainesport office, Brian Krasner (also a defendant) and Jeff
Krasner, state in their declarations that there has never been a
policy requiring employees to work over 40 hours a week,
regardless of how an employee is paid.  The other 12 declarations
are from current E-Mortgage employees who state that they have
never been subjected to a company policy requiring them to work
over 40 hours in a workweek.  Four of the declarations are from
employees from the Hainesport, New Jersey office, the same office

---

       [10]   Nastasi clarifies in his declaration that although he
came in after 10:00 a.m., he was still allowed to receive leads
because his supervisors were aware of all the work he was doing
outside the office.

where plaintiffs worked, four are from employees located in the Haddon Township, New Jersey office, three are from employees in the Lancaster, Pennsylvania office, and three are from the Lebanon, Pennsylvania office.

With regard to the employees located in offices from Haddon Township, Lancaster, and Lebanon, plaintiffs have not provided any evidence that they have any personal knowledge of the hours worked by employees in those offices and whether those employees work in excess of 40 hours per week without receiving overtime compensation. With regard to the employees in the Hainesport office, the declarations of current employees Musa Branham and George McCartney both state that they have not worked over 40 hours a week or on weekends, and by their experience, there has never been a policy in place requiring them to work over 40 hours per week or on weekends. Mr. Branham's declaration directly contradicts Holesapple's declaration in which he states that he observed Mr. Branham working in excess of 40 hours weekly, and that he told Holesapple he worked more than 40 hours per week.

The declarations submitted by defendants indicate that even if plaintiffs worked in excess of 40 hours per week without receiving overtime pay, their situation is not similar to other employees, or potential class members. See Aquilino, 2006 WL 2583563, at *2 (requiring a plaintiff to show "a factual nexus

between their situation and the situation of other current and former [employees] sufficient to determine that they are 'similarly situated.'").  The declarations of the current employees who work in the same office location where the plaintiffs worked contradict plaintiffs' declarations that all loan officers or customer service representatives were required to work in excess of 40 hours per week.

Plaintiffs also declare that they were paid on a 100% commission basis and if they did not earn commissions, they would receive no pay at all in violation of the FLSA requiring employers to pay at least the minimum wage.  Washington states that he observed that other loan officers did not receive any compensation because they failed to close out any loans. Washington's declaration, which was not part of plaintiffs' original motion, does not state who the other loan officers were that received no pay or, generally, when it occurred.  Nastasi states his commissions did not amount to minimum wages, but does not state that he has knowledge of, or observed, other loan officers who did not receive minimum wages.  Accordingly, as with the excess hours claim, plaintiffs have not provided the factual nexus needed between their claim of E-Mortgage's failure to pay them minimum wage and the potential claims of the other class members.  At best, plaintiffs have only established that all loan officers received 100% commission pay, a statement defendants do

not dispute.[11]

The Declaration of Mark Washington, submitted without the opportunity for fair reply, does provide some support for a factual nexus regarding a minimum wage claim since he states that he observed other loan officers who did not receive any compensation at all because they failed to close out loans. Washington's Declaration is more notable, however, for what it fails to say.  He does not state, for example, whether he saw the other loan officer's paychecks while office manager of the Hainesport office, nor does he provide the names of officers who did not receive any pay, when those pay periods were, or estimate the number of loan officers affected.  These vague, non-specific, and conclusory allegations from a person presumably in a position to know fail to establish the required factual nexus even applying a lenient standard.  As such, plaintiffs' motion will be denied without prejudice.

---

[11]   Although defendants responded only to the original affidavits because the revised affidavits had not yet been filed, plaintiffs do raise the minimum wage claim in their complaint and also state in their original declarations that their pay was based on 100% commissions.

16

IV.   **<u>CONCLUSION</u>**

For the foregoing reasons, plaintiffs' motion for conditional class certification will be denied without prejudice.


<u>  s/Noel L. Hillman     </u>
NOEL L. HILLMAN, U.S.D.J.

Date: <u>  December 29, 2011     </u>

At Camden, New Jersey

17